**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDUARDO NUNEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-1471 |
| | ) | |
| v. | ) | Judge Dow |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Magistrate Judge Rowland |
| corporation, OFFICER WILLIAM | ) | |
| JOHNSON, a Chicago Police Officer | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Eduardo Nunez, by his attorney, Robison Law, LLC and for his First Amended

Complaint against Defendant City of Chicago and Chicago Police Officer William Johnson

states as follows:

**Jurisdiction/Venue**

1. This incident occurred on February 17, 2013, in the township of Cicero, County of Cook,

   Illinois.

2. The jurisdiction of this court is invoked pursuant to the Civil Rights Act, 42 U.S.C.

   §1983, §1988, the judicial code 28 U.S.C. §1331 and §1343(a); and the Constitution of

   the United States.

**Parties**

3. At all relevant times pertaining to this occurrence; Plaintiff was a resident of Cicero,

   Cook County, Illinois.

4. At the time of the occurrence, Defendant City of Chicago was a municipal corporation,

and the principal employer of Defendant Johnson who was acting under color of law and in the course and scope of his employment with the City of Chicago.

**Facts**

5. On or about February 17, 2013, Plaintiff Eduardo Nunez was involved in a traffic accident with Defendant Johnson in the vicinity of 1600 South 59th Court, Cicero, Illinois.

6. Plaintiff pulled over in front of his house and Defendant Johnson exited his vehicle armed with his Chicago Police Department duty revolver.

7. Defendant Johnson attacked Plaintiff by dragging him out of his car, punching him and kicking him. Defendant Johnson then shot Plaintiff.

8. During the incident, Plaintiff's brother, Alejandro Nunez, arrived on scene and saw Plaintiff being beaten and then shot by Defendant Johnson.

9. During the course of the incident, described above, Defendant Johnson stated that he was a police officer.

10. Defendant Johnson did not have a reasonable basis for using any force, much less the amount of force he used against Plaintiff.

11. Defendant City of Chicago is aware of Defendant Johnson's long history of citizen complaints regarding excessive force, has been investigated numerous times by OPS/IPRA, but nonetheless has never been disciplined.

12. Defendant City maintains policies and practices relative to police shootings that directly cause, and are the driving force behind, the unlawful and unconstitutional conduct of the Defendant Johnson. Specifically, Defendant City's policies and practices fail to adequately train and supervise police officers and compound these failures by having no meaningful review, investigation, and discipline.

13. Defendant City fails to provide proper training and oversight of its officers in the use of force, resulting in unjustified shootings like that of Plaintiff. Likewise, police shootings are not reviewed or investigated thoroughly, and the odds of an officer facing discipline for an unjustified shooting are miniscule.

14. The Office of Professional Standards – a division of the Chicago Police Department – was dismantled in 2007 due to a perceived and real community outcry that it failed to meaningfully investigate and discipline officers who committed misconduct. It was replaced with the Independent Police Review Authority (IPRA), which in its first four years had a nearly identical rate of sustained findings against officers as its predecessor (i.e. approximately 5%). (Chicago Justice Project, Issue Brief: IPRA Review – More Access Needed, available at http://chicagojustice.org/research/issue-briefs/issue-brief-ipra-review-more-access-needed) (last visited June 1, 2015). Even when IPRA sustains findings against officers, those officers are rarely disciplined, especially in shootings.

15. Out of the approximately 374 people shot by Chicago Police since IPRA's creation, IPRA has not once found a shooting to be unjustified. One former investigator has acknowledged that its investigations "tilt" for officers in shooting investigations. (Chip Mitchell, Who Polices the Police? In Chicago, It's Increasingly Ex-Cops, WBEZ (Dec. 5, 2014) available at http://www.wbez.org/news/who-polices-police-chicago-its-increasingly-ex-cops-111194) (last visited June 1, 2015).

16. Defendant City's failure to train and supervise its officers in the use of force results in unacceptable numbers of residents being shot by police, whereas its failure to investigate and discipline creates a culture amongst police officers that they need not fear discipline for unjustifiably using excessive force.

3

17. The City of Chicago has a widespread practice of failing to discipline and/or punish police officers for the use of excessive force. This de facto policy encourages Chicago police officers to engage in misconduct with impunity and without fear of official consequences.

18. Moreover, the City has a well-settled, widespread "code of silence" that exists within the Chicago Police Department whereby officers conceal each other's misconduct in contravention of their sworn duties. This de facto policy and code of silence is evidenced and caused by the Chicago Police Department's failure to; (1) sufficiently investigate allegations of police misconduct; (2) accept citizen complaints against police officers; (3) promptly interview suspected officers or take witness statements and preserve evidence; and (4) properly and sufficiently discipline officers. This de facto policy encourages Chicago police officers to engage in misconduct with impunity and without fear of official consequences.

19. Likewise, the Defendant City has a de facto policy, practice and/or custom of investigating complaints against off duty officers differently than complaints against other citizens. This "double standard" regarding allegations of misconduct against off-duty officers includes but is not limited to: all of the above acts and/or omissions listed above; limiting charges against off duty officers to misdemeanors, regardless of the severity or outrageousness of the misconduct; not filing criminal charges against off duty officers; and suppressing felony review charges against off duty officers, regardless of the severity or outrageousness of the alleged misconduct.

20. Plaintiff was shot because Defendant Johnson lacked training and supervision in the use of force, and because he believed that his actions would not be investigated thoroughly.

21. As the proximate result of all the aforementioned actions by Defendant Johnson, Plaintiff suffered loss of freedom, bodily injury, pain and suffering, psychological damage, and medical expenses.

### COUNT I – 42 U.S.C. § 1983 Excessive Force
### (Plaintiff v. Defendant Johnson)

22. Each paragraph of this First Amended Complaint is incorporated herein.

23. The actions of Defendant Johnson in physically abusing and otherwise using unreasonable and unjustifiable force against Plaintiff, as described above, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution, incorporated to the states and municipalities through the Fourteenth Amendment, to be secure in his person, papers and effects against unreasonable searches and seizures and thus violated 42 U.S.C. §1983.

24. As the proximate result of all of the aforementioned actions by Defendant Johnson, Plaintiff suffered loss of freedom, bodily injury, pain and suffering, psychological damage and medical expenses.

WHEREFORE, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory damages against Defendant Johnson and because he acted maliciously, wantonly or oppressively, substantial punitive damages, plus the costs of this action, plus attorneys' fees and any other additional relief this Court deems equitable and just.

### COUNT II -- 42 U.S.C. § 1983 Monell

25. Each paragraph of this First Amended Complaint is incorporated herein.

26. By policy and practice, the City of Chicago directly encourages the type of misconduct Plaintiff experienced by failing to adequately train and supervise its police officers in the proper use of force, such that the City is the moving force behind the constitutional

violations Plaintiff suffered.

27. By policy and practice, the City of Chicago enables the type of misconduct Plaintiff experienced by failing to adequately investigate and review the use of force by its police officers as well as failing to discipline similar misconduct in the past. Chicago Police Officers thus believe their use of force will never be thoroughly reviewed, thereby perpetuating future misconduct like that suffered by Plaintiff.

28. These policies and practices, described earlier in the Complaint, were the proximate cause of the injuries suffered by Plaintiff in Counts I-II.

WHEREFORE, Plaintiff demands compensatory damages against Defendant City of Chicago, plus attorney's fees, costs, and any other additional relief this Court deems equitable and just.

## COUNT III – Indemnification

29. Each paragraph of this First Amended Complaint is incorporated herein.

30. Defendant City of Chicago is the indemnifying entity for the actions described above, of Defendant Johnson who took his actions while acting under the color of law and in the course and scope of his employment with the City of Chicago.

WHEREFORE, should Defendant Johnson be found liable on one or more of the claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any judgment (other than punitive damages) he obtains thereon.

6

## JURY DEMAND

Eduardo Nunez hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all claims.

Respectfully submitted,

s/Matthew Robison
Attorney for Plaintiff
Attorney No. 6291925

Robison Law, LLC
140 S. Dearborn St., Suite 404
Chicago, IL 60603
773.672.7400 (phone/fax)
matthew@brchicago.com